**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-22326-CIV-MORENO/TORRES

PAOLA MIRANDA,

      Plaintiff,

vs.

EDUARDO ANGEL PEREZ GUERRERO,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

***I.  INTRODUCTION***

This matter is before the Court on Plaintiff's Second Motion for Preliminary Injunction ("Plaintiff's Motion") [D.E. 28] filed on November 10, 2008.[1]  The Court conducted an evidentiary hearing, attended only by Plaintiff, on April 27, 2009.  Based on the motion, the unopposed evidence in the record, and oral and written arguments of counsel, Plaintiff's Motion should be granted.

Plaintiff Paola Miranda ("Plaintiff" or "Miranda") is a Latin pop singer and entertainer that filed a five-count Complaint [D.E. 27] against her former manager Defendant Eduardo Angel Perez Guerrero ("Defendant" or "Guerrero").  All allegations

---

[1]  Pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida, this case was referred by Judge Moreno to the undersigned Magistrate Judge to take all necessary and proper action as required by law with respect to all pretrial matters.

in the Complaint stem from Defendant's alleged unauthorized posting of nude "offensive photographs" of Plaintiff on a website with the domain name of www.paolamorena.com ("Defendant's website") allegedly registered and maintained by Defendant.

## II.   PROCEDURAL HISTORY

On November 10, 2008, Miranda filed her five-count Amended Complaint ("Complaint") alleging various violations of Anti-cybersquatting Consumer Protection Act 15 U.S.C. § 1129 and Sections 43(a) & (d) of the Lanham Act 15 U.S.C. § 1125(a) & (d), in addition to alleged violations of Fla. Stat. § 540.08 (Unauthorized Publication of Name or Likeness) and § 501.204 (Deceptive and Unfair Trade Practices). [D.E. 27]. On the same day, Plaintiff filed a Motion for Preliminary Injunction seeking to enjoin Defendant and/or his agents, to include Domains By Proxy, Inc. from: (1) using any name or service mark which Plaintiff used, uses now or will use in the future, including Plaintiff's name or service mark "Paola Morena," or any colorable imitation thereof, in such a way that it is likely to cause confusion, or to cause mistake, or to deceive people into believing that Plaintiff: (i) is the origin of Defendant's website, (ii) sponsored or approved of Defendant's website, or (iii) approved the use of the unauthorized offensive photographs; (2) registering, trafficking in or using Plaintiff's trade name "Paola Morena," or any colorable imitation thereof, as a domain name; (3) posting any material on the website located at www.paolamorena.com; (4) registering any colorable imitation of Plaintiff's stage name "Paola Morena" as a domain name; (5) publishing, printing, displaying or otherwise publicly using Plaintiff's stage name and service

mark "Paola Morena;" and (6) publishing, printing, displaying or otherwise publicly using any image or photograph of Plaintiff. *See* Plaintiff's Motion at 12-14. In addition, Plaintiff asks this Court to order that all labels, signs, packages, wrappers, receptacles, photographs and advertisements in the possession of the Defendant, bearing the name and service mark "Paola Morena," or colorable imitation thereof, or bearing Plaintiff's image, and all plates, molds, negatives, and other means of making the same, to be delivered to the Court and destroyed. *See id.* at 13. Finally, Plaintiff demands Defendant to file, within thirty (30) days after the service on the Defendant of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction. *See id.* at 14. Plaintiff's Motion was accompanied by a declaration of Paola Miranda.

On December 5, 2008, Defendant filed his Memorandum in Opposition. [D.E. 42]. The response, however, failed to raise any substantive argument against granting the injunction. Therefore, on January 26, 2009, Plaintiff moved to compel Defendant's response to the Motion for Preliminary Injunction. [D.E. 47]. Once again, Defendant responded without advancing any substantive argument against the issuance of an injunction. [D.E. 53]. Instead, Defendant argued that nothing in the rules of procedure or any applicable statutory law mandates a party against whom a motion has been filed to respond in writing. *See id.* ¶ 3.

On February 22, 2009, the Court issued an Omnibus Order in which we warned the Defendant that his failure to file a timely response to the pending injunction motion would indicate to the Court that Defendant had no objections to the factual

assertions made in Plaintiff's motion. [D.E. 55]. Finally, on March 4, 2009, Defendant filed his new Response in Opposition. [D.E. 58]. On the same day, however, citing "irreconcilable differences," both of Defendant's attorneys moved to withdraw from further representation of Mr. Guerrero. [D.E. 56, 59]. The Court granted the motions to withdraw and granted Defendant until April 10, 2009 to retain substitute counsel on his behalf or elect to proceed *pro se* in the case without counsel. [D.E. 67].

Defendant never retained substitute counsel, nor did he attend *pro se* the evidentiary hearing that was held on April 27, 2009, despite receiving repeated notices of the Court's Orders and the scheduling of the hearing. Consequently, at the hearing, the Court heard only oral argument from Plaintiff's counsel accompanied by various exhibits.

### III.   *FINDINGS OF FACT*[2]

Although largely unknown to the English-speaking audience in the United States, Paola Miranda is an aspiring Latin pop singer, entertainer and, as present case tends to suggest, a model. Since her arrival in the United States from Equador, Miranda acquired the stage name of "Paola Morena" and performed as the lead singer in eleven music videos. Songs such as "A Gozar la Vida" or "Rumba pa Gozar" are

---

[2] For the purposes of the injunction motion, the facts are largely undisputed. The brief Memorandum in Opposition filed by Defendant's counsel prior to his withdrawal vaguely refers to the existence of a written management contract that allegedly controls the outcome of this case. Likewise, Guerreo's affidavit, the sole piece of evidence submitted with the Memorandum in Opposition, merely states that: 1) Paola Miranda is not a citizen of the United States and is not a resident of the United States; 2) Paola Miranda obtained her work Visa for the United States through Perez Guerrero Production Inc; and 3) Angel Perez Guerrero is not the registrant or the owner of the website registered under the domain name www.paolamorena.com. [D.E. 15].

widely available for viewing over the internet. Although the precise level of Paola Miranda's popularity in the Latin pop community might be somewhat hard to ascertain, her music videos received over 67,000 hits on "YouTube," a highly popular video sharing website.

Sometime in October, 2005, Paola Miranda hired Defendant Eduardo Guerrero as her manager and agent. Apparently in an effort to boost Miranda's publicity, Guerrero developed a promotional plan that included featuring Paola Miranda in Playboy, a widely popular "men's magazine" with approximately three million readers each month in the United States alone. In order to accomplish this, Guerrero convinced Miranda to attend a professional photo-shoot session in Peru. It was the parties' understanding, however, that the nude photographs taken during that shoot were intended solely for potential feature in Playboy.

In late 2005, Guerrero informed Miranda that Playboy was interested in publishing her photographs in one of its magazines or hiring her to work on one of the shows on the Playboy Channel. Guerrero also communicated to Miranda that Playboy instructed him to take additional nude pictures of her. Once again, Miranda agreed to participate in the photo-shoot for the sole purpose of being featured in Playboy magazine.

The professional relationship between the parties ended in March, 2006 when Miranda terminated Guerrero's management services. The planned modeling feature in Playboy never finalized. Despite these two facts, however, Guerrero remained in possession of Miranda's nude photographs taken during both modeling sessions.

Thereafter, Plaintiff's singing career started to accelerate, particularly in Argentina. The parties' paths crossed once again. This time, however, not in a professional nature. Specifically, Guerrero approached Miranda and threatened to post her nude photographs on the internet unless she agreed to pay him $70,000. Miranda refused to acquiesce to Guerrero's request.

Apparently determined to live up to his promise, Guerrero posted Miranda's pictures on the internet website that is accessible at www.paolamorena.com. The website is registered to Guerrero's wife, Nancy Guerrero. The main homepage of the site displays words in Spanish "Sitio Oficial," that translates to "Official Site" in English. The website displays eleven nude or semi-nude photographs of the Plaintiff. The website also contains links to other web pages that feature articles about Paola Miranda.

Based on this record, the Court now turns to an analysis of the pertinent issues raised in the pending motion.

### IV. ANALYSIS

#### A. *Standard of Review*

To obtain a preliminary injunction, a Plaintiff must demonstrate the following: "(1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *see also Baker v. Buckeye Cellulose Corp.*, 856 F.2d

167, 169 (11th Cir. 1988). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[b]ecause a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."). However, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts*, 299 F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573; *see also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the *status quo*.").

When an injunction does more than preserve the *status quo*, however, an even stronger showing is required. *See, e.g., Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) ("A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances

in which the facts and law are clearly in favor of the moving party."); *United States v. Board of Educ. of Green County, Miss.*, 332 F.2d 40, 46 (5th Cir. 1965) ("mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

### B. *Section 43(a) Lanham Act Claim*[3]

Plaintiff's first claim asserted in the Complaint is for false endorsement and association in violation of Section 43(a) of the Lanham Act, which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> . . .
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 43(a)'s general purpose is to protect persons engaged in commerce against unfair competition. *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 (11th Cir. 2007). In order to prevail on a 1125(a) claim, a plaintiff must establish: 1) that he had a valid trademark and 2) that the

---

[3] Plaintiff's Motion is premised on all five counts of the Complaint. However, because Plaintiff has satisfied all necessary elements under Section 43(a) Lanham Act claim, the Court will not address the remaining counts for purposes of this Report and Recommendation.

defendant had adopted an identical or similar mark such that consumers were likely to confuse the two. *Leigh v. Warner Bros.*, 212 F.3d 1210, 1216 (11th Cir. 2000). Finally, Section 43(a) provides trademark protection to those who have not registered their trademark in the United States, but who were the first to use the mark in the United States marketplace. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992).

We will next apply the standard of review to Plaintiff's Section 43(a) claim.

### *1. Likelihood of Success on the Merits*

It is undisputed in this record that Plaintiff used "Paula Morena" as her stage name since the beginning of her singing career. Lanham Act provides protection for Plaintiff's stage name because the Act protects "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. This is consistent with the main rationale behind trademarks, which is to protect the public from being deceived as to the source and quality of goods, and protect the mark's owner from infringement of his property rights. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 2:1 (4th ed. 2009). Clearly, Plaintiff's use of the name "Paula Morena" not only identified her as a particular individual but, more importantly, identified her unique entertainment services. *See, e.g., Presley's Estate v. Russen*, 513 F. Supp. 1339, 1363 (D.N.J. 1981) (Terms such as "Elvis," "Elvis In Concert," or "Elvis Presley" all "protectible service marks" because all were "used in advertising, such as for performance, concerts, and on records, to identify a service."). Therefore, we

conclude that Plaintiff possesses a valid trademark interest in the name of "Paola Morena."

Next, we examine wether Defendant has adopted an identical or similar mark such that the consumers are likely to be confused. Plaintiff has proffered undisputed evidence that the domain name www.paolamorena.com is registered to Nanci Guerrero, Defendant's wife. [D.E. 66-3]. Although Defendant may not be the registrant of the website, the nature of Defendant's prior professional relationship with the Plaintiff, Defendant's attempted extortion of $70,000 from the Plaintiff, together with Defendant's close familial relationship to the registrant strongly suggest that Defendant exercises a substantial control over the website. *See, e.g., Xcentric Ventures, LLC v. Stanley*, No. CV-07-954-PHX-GMS, 2009 WL 113563, at *2 (D. Ariz. Jan. 16, 2009) (finding that a website registered under a defendant's girlfriend's name to be under the control of the defendant).

Having determined that "Paola Morena" will likely be deemed a valid mark and thus entitled to legal protection, the Court must now consider whether there is a likelihood of confusion in the instant case. Generally, seven factors are relevant when determining whether a likelihood of confusion exists: 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the allegedly infringing mark; 3) the similarity between the product and services offered by the plaintiff and defendant; 4) the similarity of the sales method; 5) the similarity of advertising methods; 6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and 7)

actual confusion. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).

After a close analysis of the website, we conclude that the domain name of www.paolamorena.com, combined with designation of the site as the "official site," clearly misrepresent to the consumer and the public the site's "affiliation, connection, or association" with the entertainer Paola Miranda. *See, e.g., Quokka Sports, Inc. v. Cup Intern. Ltd.*, 99 F. Supp. 2d 1105, 1115 (N.D. Cal. 1999) (website with a domain name of www.americascup.com is essentially "masquerading as an official site associated with the America's Cup [regatta event]," thus likelihood of consumer confusion exists).

Furthermore, the entire site is dedicated to the Plaintiff, featuring her pictures and news articles. Based on this unchallenged evidence proffered by the Plaintiff, we conclude that visitors to Defendant's website are likely to believe that Paola Miranda has sponsored or otherwise approved the contents of the site. *See, e.g., Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) (finding that uniform depicted in an adult film "Debbie Does Dallas" unquestionably brings to mind the Dallas Cowboys Cheerleaders, thus strongly indicating latter's sponsorship or approval).

The Court finds that Plaintiff has made a substantial showing of likelihood of success on merits on its Section 43(a) of the Lanham Act claim.

### 2. *Irreparable Harm*

There exists a long line of cases in the Eleventh Circuit that recognizes and applies a presumption of irreparable harm once a plaintiff established a likelihood of

success on the merits of a trademark infringement claim. *See, e.g., Robertson*, 147 F.3d at 1310. The continuing validity of this presumption, however, has been put into question by a recent decision of the United States Supreme Court. *See generally eBay Inc., v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). In *eBay*, the Supreme Court rejected application of categorical rules to the grant of denial or injunctive relief. *Id.* at 393. Although the *eBay* decision addressed permanent injunctive relief under the Patent Act, a recent Eleventh Circuit opinion appears to have extended its holding to trademark infringement actions under the Lanham Act. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008) ("Because the language of the Lanham Act – granting federal courts the power to grant injunctions 'according to the principles of equity and upon such terms as the court may deem reasonable' – is so similar to the language of the Patent Act, we conclude that the Supreme Court's *eBay* case is applicable to the instant case.").

The panel's opinion in *Axiom,* however, acknowledged that under certain conditions a presumption of harm may still be presumed in certain trademark infringement cases. *Id.* at 1228 ("[W]e decline to decide whether the district court was correct in its holding that the nature of the trademark infringement gives rise to a presumption of irreparable injury. In other words, we decline to address whether such a presumption is the equivalent of the categorical rules rejected by the Court in *eBay*."). The unique nature of this type of case may indeed be one that may continue to allow for a presumption of irreparable harm.

Nonetheless, regardless of whether irreparable harm may still be presumed in trademark infringement cases, we find, based on the record evidence before us, that Plaintiff will indeed suffer irreparable harm if Defendant continues operating the website www.paolamorena.com.

Irreparable harm is the "*sine qua non* of injunction relief." *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Without a finding of a likelihood of an "actual and imminent" irreparable injury, preliminary injunctive relief is improper. *Id.* To satisfy this requirement a movant must show a significant threat of irreparable harm, and not merely rely on remote or speculative injuries. *See, e.g., Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992) (injunction is inappropriate if possibility of future harm arising from the behavior plaintiff seeks to enjoin is purely speculative).

Plaintiff argues that she will suffer an irreparable injury because her professional career as a singer and entertainer is dependent upon her ability to attract, grow and maintain her fan base. She further argues that the photographs Defendant posted on his website are inconsistent with and repugnant to the image that Plaintiff is seeking to project. We agree. Defendant's publication of Plaintiff's nude photographs over the internet, combined with his false claim of endorsement and sponsorship by the Plaintiff, clearly has substantial impact on Plaintiff's image to the public. The evidence suggests that Paola Morena is a young aspiring entertainer. The public is likely to develop a certain unwanted perception of the Plaintiff if she continues to be associated with the pictures posted on Defendant's website. Naturally,

the public's perception about an individual, especially a celebrity, is difficult, if not impossible, to undo.

The Court specificallly finds, therefore, that Plaintiff will suffer irreparable injury if Defendant continues operating the website www.paolamorena.com.

### 3. Balance of Hardships

Given the fact that Plaintiff's reputation is at risk, this factor tilts overwhelmingly in her favor. Furthermore, based on the evidence currently before the Court, it appears that Defendant does not possess ownership rights to the photographs that are currently published on his website. Finally, no evidence on record indicates that Defendant will suffer any harm at all if this injunction is granted. We, therefore, conclude that Plaintiff has established that the potential harm to her outweighs the harm the preliminary injunction may cause to the Defendant.

### 4. An Injunction Would not Disserve the Public Interest

This factor also cuts in favor of the Plaintiff. Naturally, the public is disserved by Defendant's dissemination of untruthful information, namely his false claim of website's endorsement by the Plaintiff.

### V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiff's Second Motion for Preliminary Injunction [D.E. 28] be **GRANTED** as follows. In order to maintain *status quo*, until trial on the merits, Defendant Eduardo Angel Perez Guerrero should be enjoined from:[4]

---

[4] Although Plaintiff's Motion seeks more extensive injunctive remedies, *see supra* at 2, the Court finds that less restrictive injunction will sufficiently preserve

1. Using any name or service mark which Plaintiff used, uses now or will use in the future, including Plaintiff's name or service mark "Paola Morena," or any colorable imitation thereof, in such a way that it is likely to cause confusion, or to cause mistake, or deceive people into believing that Plaintiff:

   (i) Is the origin of Defendant's website,

   (ii) Sponsored or approved of Defendant's website,

   (iii) Approved the use of the unauthorized photographs.

2. Registering, trafficking in or using the name "Paola Morena," or any colorable imitation thereof, as a domain name.

3. Posting any material on the website located at www.paolamorena.com.

4. Registering any colorable imitation of Plaintiff's stage name "Paola Morena" as a domain name.

5. Publishing, printing, displaying or otherwise publicly using Plaintiff's stage name and service mark "Paola Morena."

6. Publishing, printing, displaying or otherwise publicly using any image or photograph of Plaintiff.

It is further **RECOMMENDED** that Defendant be Ordered to file with the Court and serve on Plaintiff a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, within thirty (30) days after the service on Defendant.

---

*status quo* pending the resolution of this case.

The parties shall have five (5) business days from this date within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. The Court will serve Defendant by mail with a copy of this Report and Recommendation at the last known address provided by Defendant's former counsel. Given the fact that this motion is essentially unopposed and Defendant has refused to attend the injunction hearing, the Court will expedite the period for filing objections as per S.D. Fla. Local Mag. J. R. 4(b). Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any issue included in the Report and shall bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1); S.D. Fla. Local Mag. J. R. 4(b).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of May, 2009.

EDWIN G. TORRES
United States Magistrate Judge